857 So.2d 1107 (2003)
STATE of Louisiana
v.
Monotor M. PETE.
No. 2003-KA-0694.
Court of Appeal of Louisiana, Fourth Circuit.
September 24, 2003.
Eddie J. Jordan, Jr., District Attorney, Donna R. Andrieu, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY and Judge MAX N. TOBIAS Jr.).
JOAN BERNARD ARMSTRONG, Judge.
On August 29, 2001, the defendant, Monotor M. Pete, was charged by bill of *1108 information with carnal knowledge of a juvenile, a violation of La. R.S. 14:80. At his arraignment on September 27, 2001, the defendant pleaded not guilty. On November 28, 2001, the defendant was ordered to submit to a paternity test. The State filed a motion to hold the defendant in contempt of court after he failed to keep several appointments for testing. On January 4, 2002, at a hearing on the motion, the trial court found the defendant had willfully and deliberately refused to comply with the order of November 28, 2001 and he was found to be in contempt of court and sentenced to serve 120 days in Orleans Parish Prison. After trial on November 7, 2002, a six-member jury found him guilty as charged. He was sentenced on January 16, 2003, to serve six years at hard labor; the sentence includes the special condition that he register as a sex offender. His motion to reconsider the sentence was denied, and his motion for an appeal was granted.
At trial T.H. testified that she was fourteen years old in April and May of 2000 when she first met the defendant.[1] She was at the public library, and he sat down at a table near her, and they began talking. They spoke on the telephone a few times after that, and then he came by her house one day. They had consensual sex that day and on other occasions. T.H.'s mother worked at night, and the defendant usually came to her house while her mother was working. She stated that she told him her age the day they met in the library. In September when she realized she was pregnant, she told her sister who then informed her mother. After her son was born, she and he had DNA tests.
Dr. Michael Murray, an expert in DNA analysis and paternity testing, testified that he supervises the DNA testing lab at ReliaGene Technologies. He stated that T.H. and her son gave blood on December 4, 2001, and completed the forms required. The defendant, who gave blood on another day, refused to sign the form and wrote "under duress" on every line where his signature was required. Dr. Murray told the court the tests indicated that the probability the defendant was the father of T.H.'s child was 99.999%. Under cross-examination, the doctor stated that although he could not say absolutely that the defendant was the father of the victim's child, it was extremely likely that the defendant was the father.
Detective John Gutierrez of the Sex Crime Section of the N.O.P.D. testified that he participated in the investigation involving the defendant. The detective was notified that a young pregnant girl had named the defendant as the father of her child. Detective Gutierrez prepared a photo lineup, and the victim selected the picture of the thirty-nine year old defendant and named him as the person with whom she had consensual sex when she was fourteen years old. Under cross-examination, the detective stated that the victim knew the name and age of the defendant and that she never told the defendant her age. Moreover, she never reported the relationship until she found she was pregnant.
The defendant testified that he met T.H. on a "party line"a singles telephone line. T.H. and a gay man were both on the line initially, and T.H. told the defendant she was almost twenty. He said, he had no reason to doubt her age. They exchanged telephone numbers, and she called him right back at home. He met her at her house that night. As the defendant was coming into the house, another man was leaving. That man, who was introduced as T.H.'s uncle, kissed her on the head as he *1109 left. T.H.'s mother was not at home, and T.H. told the defendant that the apartment was hers. She had a six-month-old baby there, and she claimed it was hers and said the baby's father was in jail. The defendant testified that he visited T.H.'s house almost every night for six to eight weeks from the time he met her, and on most nights he stayed there the entire night. One night he became suspicious when she would not let him go upstairs. He also claimed he "popped over" to her place during the day several times, and her mother was not at home. The defendant never tried to conceal his identity from T.H.; in fact, he gave her his business card. He said he never intentionally had sex with someone under seventeen.
The State called T.H.'s mother, R.H., to testify in rebuttal. R.H. said that she did not know that her daughter was seeing the defendant during April and March of 2000. R.H. worked nights at Rite Aid, but Sunday and Monday were her days off. When asked if she had been home on those days, she said that she would "sometime ... go places."
A review of the record for errors patent reveals none.
In a single assignment of error, the defendant argues that he was denied the assistance of counsel at the presentencing investigatory interview.
The defendant maintains that under the Louisiana Constitution and the United States Constitution he is entitled to assistance of counsel at each stage of the proceedings in a criminal prosecution. However, he concedes that the presentencing investigatory report is not an essential part of sentencing process. As authority for his position that he was entitled to counsel during the interview with the probation officer, he cites the Louisiana Standards on Indigent Defense which provide in pertinent part that "[w]here appropriate, defense counsel should attend the probation officer's interview with the accused." Nevertheless, he acknowledges that Supreme Court Rule XXXI, which authorizes the Louisiana Indigent Defenders Board to construct these guidelines, also provides that the standards "shall not form a basis for a procedural or substantive attack in any case or proceeding pending or instituted in the Louisiana criminal justice system...." Thus, the Louisiana Standards on Indigent Defense, which provide for assistance of counsel "where appropriate," are specifically limited so as not to provide the authority this defendant seeks.
The State cites Baumann v. U.S., 692 F.2d 565 (9 Cir.1982), a non-capital case in which the appellant argued the same point made in the instant case. The Ninth Circuit held that the Fifth and Sixth Amendment rights to counsel did not confer a constitutional right on a defendant to have counsel present at the presentencing interview.[2]Baumann, 692 F.2d at 574. Furthermore, in Baumann, the appellant maintained he received a longer sentence because of the probation officer's report, and in the instant case, Pete does not argue that he was harmed by not having counsel at his presentencing interview.
*1110 The State adopts the holding of the Ninth Circuit in this case; however, this federal case provides only persuasive authority. Under La.C.Cr.P. art. 875, a court may order a presentencing investigatory report, and under art. 877, the court may inform the defendant or his counsel of the contents of the report. The Code of Criminal Procedure does not require a presentencing investigatory report prior to sentencing, and it certainly does not provide that defense counsel be present when a defendant is interviewed for such a report In State v. Telsee, 388 So.2d 747 (La.1980), the Supreme Court considered a case in which the defendant argued that he was adversely affected by presentencing information communicated privately to the judge, and the Court held that a defendant must have an opportunity to contradict or explain prejudicial information in a presentencing report or otherwise presented to the judge.
At the sentencing hearing in the case at bar, the defense attorney announced that he had reviewed the presentencing report. He then informed the judge that the defendant had requested his attorney's presence when the presentencing report was made and his request was not granted. He asked that the court not consider the report. The defendant was given an opportunity to address the court, and he spoke of filing a motion to this court arguing that he was denied counsel during the interview. However, he never argues that he suffered any harm as a result of the report.
Clearly the defendant did not have a right to counsel during the presentencing interview. Under State v. Telsee, both he and his attorney were given an opportunity to address the court about the interview.
Furthermore, when he was sentenced, the judge recited his prior arrests and convictions for possession of marijuana, first offense, and battery of a police officer. The judge, who also presided at defendant's trial, reviewed the facts of the case and the sentencing guidelines under La. C.Cr.P. art. 894.1 and imposed a six-year sentence. The presentencing report recommended a five-year term, and the maximum sentence under La. R.S. 14:80 is ten years and/or a fine of not more than $5,000. Thus, the defendant did not receive the sentence recommended by the probation officer or the maximum sentence. Rather, having observed the defendant's reluctance to undergo DNA testing, his lack of remorse for his offense, and his complete disinterest in the child born of his action, the trial judge imposed a sentence based on his criminal history and the facts of the case as presented at trial.
This assignment is without merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] According to the bill of information T.H.'s birth date is August 8, 1985.
[2] In Baumann, the court reasoned that the trial judge had wide discretion in determining a sentence no matter what the pre-sentence report suggested. However, in U.S. v. Herrera-Figueroa, 918 F.2d 1430 (9 Cir.1991), an appellant successfully argued that given the adoption of the Federal Sentencing Guidelines, the pre-sentence interview constitutes a critical stage of the proceedings for sixth amendment purposes, and a defendant's request for an attorney must be honored. The defendant in Herrera-Figueroa had refused to take part in a presentencing interview without counsel, and at sentencing the judge declared that the sentence was based on the finding of the probation officer.