44 P.3d 1193

**STATE of Idaho, Plaintiff–Respondent,**

v.

**David E. CURLESS, Defendant– Appellant.**

No. 25704.

Court of Appeals of Idaho.

Jan. 30, 2002.

Review Denied April 25, 2002.

**140**

Nevin, Herzfeld, Benjamin McKay, Boise, and Grant Newcomb, Seattle, WA, for appellant. Maynard D. Grant argued.

Hon. Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for respondent. Michael A. Henderson argued.

PERRY, Chief Judge.

David E. Curless appeals the district court's orders denying his motion for a new trial and his motion to exclude a court-ordered psychosexual evaluation at sentencing. We affirm.

## I.

## BACKGROUND

Between April and October 1997, a woman and her two young sons, S.L. and B.L., lived at Curless's home after they were evicted from an apartment. The woman also had another son, C.L., who was living with his father at that time, but came to stay with his mother at the Curless home on at least one occasion. In March 1998, C.L. and S.L. revealed to a babysitter that Curless had molested them while they were staying at the Curless home. The babysitter relayed the disclosures to the mother, who notified Kootenai County authorities. An investigation ensued and, on April 24, 1998, the state filed a complaint charging Curless with two counts of lewd conduct with a minor under sixteen. I.C. § 18–1508.

A trial was held in September 1998. At trial, conflicting evidence was presented regarding the date of a housewarming barbeque that was held by Curless's son. This date was important because C.L. testified that he had only visited Curless's house once, on the date of the barbeque, and that the sexual acts had occurred that night. Curless's sister testified that she was visiting from Utah, that she attended the barbeque, and that she and Curless took the boys home from the barbeque that night. Curless's sister testified that Curless could not have molested the boys because she and Curless played cards all night, so he was never left alone with the boys. It was established that Curless's sister arrived from Utah in late July 1997. The state introduced evidence indicating that the son's manufactured home was placed on the site in late June or early July. The state argued in closing that based on those dates, the housewarming barbeque likely occurred prior to the arrival of Curless's sister. Following a three-day trial, a jury found Curless guilty of both counts.

Curless filed a motion for new trial, which the district court denied. The district court ordered Curless to submit to a psychosexual evaluation pursuant to I.C. § 18–8316. Curless submitted to the evaluation and later filed a motion requesting that the evaluation be excluded from the sentencing hearing, alleging that it violated his constitutional rights. The district court denied that motion. The district court sentenced Curless to concurrent life terms, with ten-year minimum periods of confinement. Curless appeals.

## II.

## STANDARD OF REVIEW

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an

exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

## III.

## ANALYSIS

### 1. Motion for New Trial

Curless first argues that the district court abused its discretion in denying his motion for new trial. Curless filed the motion pursuant to Idaho Criminal Rule 34 and I.C. § 19–2406, asserting that he was entitled to a new trial on the basis of newly discovered evidence. Curless supported his motion with affidavits from his wife and other barbeque guests stating that Curless's sister was present at the barbeque and that she had left the barbeque that night with Curless and the boys. Curless also supported the motion with a statement from a manufactured home company indicating when the home was delivered to the site and a statement from the power company listing the date power was connected to the home.

Curless contended the evidence was newly discovered because he did not realize the date of the barbeque was material to his case until the prosecutor made his closing argument and until the jury sent a note to the judge during deliberations. During closing argument, the prosecutor argued that Curless's sister lied when she testified that she was at the barbeque and that, therefore, the jury should believe the testimony of the two boys. The jury's note sought portions of the testimony of Curless's wife regarding the date of the barbeque.

■ In reaching its decision, the district court relied upon the standard set forth in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976). *Drapeau* establishes a four-prong test for determining whether a motion for a new trial based upon newly discovered evidence should be granted. A motion based on newly discovered evidence must disclose that: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) it will probably produce an acquittal; and (4) failure to learn of the evidence was due to no lack of

diligence on the part of the defendant. *Id.* at 691, 551 P.2d at 978. The district court denied the motion, concluding that all of the evidence supporting the motion was known to Curless and obtainable prior to and during the trial. The district court stated that whether Curless realized the importance and necessity of the evidence during trial was a matter separate from the issue of whether the evidence was newly discovered.

■ On appeal, Curless cites no authority for the proposition that if a party does not realize the importance of existing evidence until after the trial, then that party is entitled to a new trial in order to present that evidence. Rather, our appellate courts have consistently held otherwise.

A new trial should never be granted on the ground of newly-discovered evidence when such evidence is merely cumulative, nor when the alleged newly-discovered evidence was easily within the reach of the defendant, and could, with reasonable diligence, have been produced at the trial. To grant a new trial on such grounds would not be subservient to the public good, but would, on the other hand, encourage a careless and loose presentation by the defendant of his defense.

*State v. Davis*, 6 Idaho 159, 174, 53 P. 678, 682 (1898). *See also Drapeau*, 97 Idaho at 692, 551 P.2d at 979.

Curless's contention that there was no way he could anticipate the need to present such evidence until closing argument and jury deliberations is not borne out by the trial transcript. Rather the transcript reveals that the presence of Curless's sister at the barbeque and the date of the barbeque were in conflict throughout the trial. During defense cross-examination of C.L. and his mother, both denied that Curless's sister was present at the barbeque. Curless's wife testified that the barbeque was in the first half of July and that Curless's sister was present. Curless's sister testified that she did not arrive in the area until July 24 or 25, but that she was present at the barbeque. Immediately after her testimony concluded, the state called Curless's son as a rebuttal witness. Curless's son testified that the barbeque was held a couple of weeks after the steel for the

manufactured home was set. The state then admitted into evidence a building permit showing that the steel was set on June 23.

The transcript indicates that defense counsel was seeking to establish the presence of Curless's sister at the barbeque throughout the course of the trial. The transcript also reveals that the prosecution presented testimony and at least once piece of tangible evidence that indicated that the barbeque was prior to her arrival. Therefore, we conclude that the date of the barbeque and the presence of Curless's sister at it were issues disputed by the parties during the trial, and not issues that remained undisputed and unimportant until the prosecutor's closing argument. For this reason, Curless's motion fails to meet the first prong of the standard set forth in *Drapeau*, and his motion for new trial was properly denied on that basis.

■ Curless also argues that his motion should have been granted in the interest of justice pursuant to I.C.R. 34. However, the language of Rule 34, stating that the trial court may grant a new trial to the defendant if required in the interest of justice, does not provide the *grounds* for a new trial, but instead sets forth the *standard* that a trial court must apply when it considers a motion for new trial. *State v. Cantu*, 129 Idaho 673, 675, 931 P.2d 1191, 1193 (1997). The only *grounds* for a motion for new trial are provided in I.C. § 19–2406. *Id.* We hold that the district court did not abuse its discretion in denying Curless's motion for a new trial.

## 2. Motion to Exclude Psychosexual Evaluation

Curless next contends that the district court erred when it denied his motion to exclude the psychosexual evaluation from consideration at sentencing. Curless argues the evaluation should be excluded because it violated his privilege against self-incrimination and his right to counsel contained in the Fifth and Sixth Amendments of the United States Constitution and Article I, Section 13 of the Idaho Constitution. Because counsel for Curless does not argue that the Fifth and Sixth Amendments should be applied any

differently than Article I, Section 13, we will rely upon judicial interpretation of the Fifth and Sixth Amendments in rendering our decision.

## A. Privilege Against Self–Incrimination

Curless argues that the evaluation violated his privilege against self-incrimination because he was not read his *Miranda*[1] rights prior to interviews with the psychologist who prepared the report. In support of his argument, Curless directs this Court to two United States Supreme Court cases discussing the application of the privilege against self-incrimination to sentencing matters. *See Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). In *Estelle*, the Supreme Court held that a criminal defendant who neither initiates a psychiatric exam, nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if statements he makes can be used against him during a capital sentencing proceeding. *Estelle*, 451 U.S. at 468, 101 S.Ct. at 1875, 68 L.Ed.2d at 372. In *Mitchell*, the Supreme Court stated:

Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony. As the Court stated in *Estelle*: "Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment." 451 U.S. at 463, 101 S.Ct. at 1873, 68 L.Ed.2d at 369. *Estelle* was a capital case, but we find no reason not to apply the principle to noncapital hearings as well.

*Mitchell*, 526 U.S. at 326, 119 S.Ct. at 1314, 143 L.Ed.2d at 435–36. Curless contends that when *Estelle* and *Mitchell* are read together, the result is that a defendant cannot be compelled to participate in any post-sentencing psychiatric exam—such as a psychosexual evaluation—that may affect the sentencing determination in that case.

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Fifth Amendment, by its terms, prevents a person from being compelled in any criminal case to be a witness against himself or herself. It has long-been held that this prohibition not only permits a person to refuse to testify at a criminal trial in which he or she is a defendant, but also entitles the person not to answer official questions put to the person in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him or her in future criminal proceedings. *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409, 418 (1984). In all such proceedings, a witness protected by the privilege may rightfully refuse to answer unless and until the witness is protected against the use of the compelled answers and evidence derived therefrom in any subsequent criminal case in which the witness is a defendant. *Id.* Absent such protection, if he or she is nevertheless compelled to answer, the answers are inadmissible against the witness in a later criminal prosecution. *Id.* A defendant does not lose this protection by reason of conviction of a crime; notwithstanding that a defendant is imprisoned at the time he or she makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime other than that for which he or she has been convicted. *Id.*

It has also been recognized that the Fifth Amendment speaks of compulsion and does not preclude a witness from testifying voluntarily in matters that may incriminate him or her. *Id.* at 427, 104 S.Ct. at 1142, 79 L.Ed.2d at 419. Therefore, if a witness desires the protection of the privilege, the witness must claim it or he or she will not be considered to have been compelled within the meaning of the Amendment. *Id.*

The United States Supreme Court has recognized two exceptions to the general rule that a witness must claim to the privilege in order to enjoy its protections. *See id.* The first applies to witnesses who are interrogated while held in police custody. *See id.* at 430, 104 S.Ct. at 1143, 79 L.Ed.2d at 421. In those circumstances, the Fifth Amendment requires the exclusion of incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth Amendment privilege after being suitably warned of the right to remain silent and of the consequences of his or her failure to assert it. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Custodial interrogation is ordinarily conducted by officers who are acutely aware of the potentially incriminatory nature of the disclosures sought, while the custodial setting contains inherently compelling pressures which work to undermine the individual's will to resist and to compel the individual to speak where he or she would not otherwise do so freely. *Id.* at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. The Supreme Court has consistently held that this exception does not apply outside the context of the inherently coercive custodial interrogations for which it was designed. *See Murphy*, 465 U.S. at 430, 104 S.Ct. at 1143, 79 L.Ed.2d at 421.

The second exception applies to cases where the assertion of the privilege is penalized so as to foreclose a free choice to remain silent, and compel a witness to give incriminating testimony. *See id.* at 434, 104 S.Ct. at 1145, 79 L.Ed.2d at 423–24. This exception prevents the state from imposing substantial penalties because a witness elects to exercise his or her Fifth Amendment right not to give self-incriminating testimony. *Id.* The threat of punishment for reliance on the privilege distinguishes cases of this sort from the ordinary case in which a witness is merely required to appear and give testimony. *Id.*, at 435, 104 S.Ct. at 1146, 79 L.Ed.2d at 424.

In this case, we conclude that we need not reach the issue of whether the Fifth Amendment applies to psychosexual evaluations in noncapital cases because Curless's failure to assert the Fifth Amendment during his interviews with the evaluator is fatal to his claim. The psychosexual evaluation in this case was prepared over the course of several days. The parties do not dispute that Curless failed to assert the Fifth Amendment during any of his interviews with the evaluator, and Curless's situation did not fall within an exception to the general rule.

We first analyze whether this case falls under the exception for interrogations in police custody. The record in this case reveals that Curless was in custody at the time of the evaluation and that jail personnel transported him to his interviews with the evaluator. Therefore, Curless was in custody for purposes of *Miranda*. However, the record also reveals that the questioning in this case did not take place in a police station and was not conducted by police personnel. Rather, the evaluator who did the questioning in this case was a neutral party appointed by the district court pursuant to I.C. § 18–8316. Based on the circumstances surrounding the questioning in this case, we conclude that Curless was not subject to the compelling sort of interrogation contemplated in *Miranda*. Therefore, the first exception to the general rule does not apply in this case.

With regard to the second exception, there is no evidence in the record that Curless was threatened with a penalty if he were to assert the privilege during interviews with the evaluator. We are cognizant that at the outset of the evaluation process, Curless signed a form entitled, "Psychosexual Evaluation Agreement," which stated that his failure to fully participate in the evaluation process would jeopardize the process and possibly result in an inability to render an evaluation. This statement was not a penalty, but rather an explanation to Curless that his full participation was crucial to the evaluation process. Explaining the practical consequences of the failure to participate is not equivalent to a threat of penalizing someone if he or she fails to participate. Therefore, we conclude that the second exception is inapplicable under the circumstances of this case.

Because neither exception to the general rule applies to the facts of this case, Curless was subject to the general rule that a witness must either claim the Fifth Amendment privilege against self-incrimination or waive it. Because Curless never asserted the privilege, he is not entitled to its protections, and his claim that the evaluation violated his Fifth Amendment privilege must fail.

## B.   Right to Counsel

The record in this case contains an affidavit from Curless's trial counsel stating that counsel never advised Curless of the possible uses of the psychosexual evaluation or of his privilege against self-incrimination. The record also contains an affidavit from Curless stating that he left messages for his trial counsel on numerous occasions in order to discuss the upcoming evaluation, but counsel never returned his calls. The record reveals that Curless's trial attorney remained counsel of record until after sentencing, was aware that a psychosexual evaluation was ordered, and was aware of the dates that the evaluation would be conducted. It is Curless's contention that the failure of counsel to return his phone calls and advise Curless of his privilege against self-incrimination constituted a deprivation of his right to counsel.

The Sixth Amendment of the United States Constitution guarantees the right to counsel. For indigent defendants this includes the right to court-appointed counsel. *Gideon v. Wainwright*, 372 U.S. 335, 343–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799, 804–05 (1963). The Sixth Amendment right to counsel attaches at or after the intiation of an adversary judicial criminal proceeding—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 417 (1972). Once the right has attached, the Sixth Amendment is violated whenever the accused is denied counsel at a critical stage of the adversary proceeding. *United States v. Bohn*, 890 F.2d 1079, 1080 (9th Cir.1989). The Supreme Court has long-recognized sentencing as a critical stage. *See Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393, 402 (1977).

Curless argues that *Estelle* extends the right to counsel to psychiatric examinations undertaken to provide information for sentencing. The Ninth Circuit Court of Appeals has held that there is a substantial difference between a psychiatric examination of a defendant in a capital case seeking information on the defendant's future dangerousness and a routine presentence interview seeking in-

formation which the district court may rely on in pronouncing sentence. In *Baumann v. United States*, 692 F.2d 565, 576 (9th Cir. 1982), the court stated that *Estelle* should be read narrowly as it involved a bifurcated jury proceeding which included a potential death sentence. *Baumann*, on the other hand, involved a defendant convicted of a noncapital offense and subject to sentencing by a judge.

In a later case, the court explained that the applicability of *Estelle's* reasoning on the Fifth and Sixth Amendment issues was limited to the distinct circumstances of bifurcated capital proceedings. *See Hoffman v. Arave*, 236 F.3d 523, 539 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001). In *Hoffman,* the court explained that its decision in *Baumann* rested on the substantial differences in sentencing procedures and stakes between capital and routine sentences. *Id.* In *Hoffman,* the court held that a presentence interview in a capital case did constitute a critical stage for Sixth Amendment purposes, but was careful to explain that its holding was based in part on the *Baumann* distinction between capital and noncapital cases. *Id.* at 540.

 The psychosexual evaluation in Curless's case was more akin to a presentence interview than the interview conducted to determine competency and future dangerousness in *Estelle.* The information provided in the evaluation allowed the district court to make a more informed, appropriate sentencing decision that best furthered the sentencing goals set forth in I.C. § 19–2521. In addition, we note that presentence investigations are usually conducted by state agents, while psychosexual evaluations are almost always conducted by neutral, third parties not employed by the state. Curless's case is not a capital case and did not involve a bifurcated jury proceeding. Following the rationale of the Ninth Circuit, we conclude that Curless's case is distinguishable from *Estelle* and, instead, more similar to the facts of *Baumann.* Therefore, we hold that Curless's psychosexual evaluation did not constitute a critical stage for Sixth Amendment purposes.

## IV.

## CONCLUSION

Curless's motion for a new trial was properly denied because the evidence supporting the motion was readily available to him at the time of trial and he was or should have been aware of the need to present it. His Fifth Amendment privilege against self-incrimination was not violated during the evaluation process because he waived the protections of the privilege when he failed to assert it during interviews with the evaluator. Finally, his Sixth Amendment right to counsel was not violated by the psychosexual evaluation because the evaluation interviews did not constitute a critical stage of the proceedings. Therefore, we affirm the decisions of the district court denying Curless's motion for a new trial and motion to exclude the court-ordered psychosexual evaluation at sentencing.

Judge LANSING and Judge Pro Tem SCHILLING, concur.