169 P.3d 284

**Carl Lewis MADISON, Petitioner–Appellant,**

v.

**Olivia CRAVEN, Ed Chenney and David Trial, Respondents.**

No. 33710.

Court of Appeals of Idaho.

Aug. 6, 2007.

Review Denied Oct. 15, 2007.

Carl Lewis Madison, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; William M. Loomis, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Carl Lewis Madison, a prison inmate, filed an action against the Executive Director of the Commission of Pardons and Parole ("Commission") and two therapists at the Idaho Department of Correction, requesting that certain information be removed from his prison record and not considered in any future parole proceedings because the information was allegedly obtained through violations of his privilege against self-incrimination. The district court granted summary judgment dismissing the action, and Madison appeals.

## I.

## BACKGROUND

In 1997, Madison was convicted of sexual abuse of a minor under sixteen, Idaho Code § 18–1506, for which he received a sentence of fifteen years with three years determinate. During the course of his incarceration, Madison participated in a sexual offender therapy program. He contends that during that program, he was forced to falsely[1] admit a sexual attraction to the victim, his daughter, and was later terminated from the group when he accused the therapists and Department of Correction personnel of colluding to make him appear to be a serial pedophile. In May of 1999, he was denied parole. The minutes of that parole hearing contain a notation that Madison had molested fifteen victims. Madison later asserted that this statement in the minutes was false and that he had only one victim.

On November 14, 2003, Madison filed a prisoner civil rights complaint asserting that the therapists' acts and the allegedly false information in the parole hearing minutes violated his civil rights. The district court treated Madison's complaint as a habeas corpus petition and dismissed it when Madison did not pay the filing fee. He appealed, and in *Madison v. Craven,* 141 Idaho 45, 105 P.3d 705 (Ct.App.2005), we reversed and remanded. After remand, Madison amended his complaint.

---

1. He advances the theory that he should not be branded as a pedophile because he imagined his victim as an adult when he molested her.

The nature of the claims that Madison intends to be presenting in his pro se complaint and subsequent filings is difficult to discern or characterize. His general claim seems to be that various post-trial admissions he made, including those contained in the presentence investigation report (PSI), and statements made at the parole hearing and during sexual offender treatment, were obtained in violation of his Fifth Amendment right against self-incrimination and must therefore be purged from his record and not considered in any future therapy or parole proceedings. He also contends that he has been subjected to cruel and unusual punishment, and raises several other related claims.

The district court initially characterized the amended complaint as a habeas corpus petition before deciding to handle it as an action for violation of civil rights. Ultimately, the district court dismissed the action on the respondents' summary judgment motion. Madison appeals, asserting that the district court misinterpreted one of his claims, did not address several others, and misapplied the law.

## II.

## ANALYSIS

### A. Standard of Review

Summary judgment may be entered only if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho Rule of Civil Procedure 56(c). *See also Avila v. Wahlquist,* 126 Idaho 745, 747, 890 P.2d 331, 333 (1995); *Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene,* 126 Idaho 740, 742, 890 P.2d 326, 328 (1995). On review, this Court liberally construes the evidence in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994). If the evidence reveals no material disputed factual issues, however, only a question of law remains over which this Court exercises

free review. *Roell v. Boise City,* 130 Idaho 199, 200–01, 938 P.2d 1237, 1238–39 (1997).

In this case, there are no disputed issues of fact; the respondents' summary judgment motion did not challenge Madison's allegations that the minutes of the parole hearing erroneously state that he had fifteen victims or that Madison's therapist required him to make statements regarding his sexual attraction toward the victim. Therefore, the issue presented is whether these alleged events violated certain of Madison's constitutional rights. Because we exercise de novo review over this legal issue, Madison's assertions that the district court misinterpreted his arguments or erred in its legal analysis need not be specifically addressed.

### B. Fifth Amendment Right Against Self-incrimination

Madison's primary argument on appeal is that information elicited after his conviction—including the statement in his parole hearing that he had fifteen victims, statements made during therapy regarding his sexual attraction to his daughter, and information in the PSI report—was obtained in violation of his Fifth Amendment right against self-incrimination and must therefore be purged from his record. The thrust of his argument is that these statements were elicited to make him appear to be a serial pedophile, which he contends has undermined his ability to trust his therapists and participate in therapy. He notes that this will make it difficult for him to be paroled, and speculates that if this characterization of his criminal nature remains in his record, it could be used against him in future matters.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281 (1973).

*See also Minnesota v. Murphy,* 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409, 418 (1984). The availability of the Fifth Amendment privilege against self-incrimination "does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *In re Gault,* 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527, 558 (1967). A witness protected by the privilege may rightfully refuse to answer unless and until the witness is granted immunity from the use of the compelled answers in any subsequent criminal case in which the witness is a defendant. *Murphy,* 465 U.S. at 426, 104 S.Ct. at 1141, 79 L.Ed.2d at 418. If he or she is nevertheless compelled to answer without immunity, the answers are inadmissible against the witness in a later criminal prosecution. *Id.* An individual does not lose this protection by reason of conviction of a crime; notwithstanding that a person is imprisoned at the time he or she makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent criminal trial of that person. *Id.; State v. Curless,* 137 Idaho 138, 143, 44 P.3d 1193, 1198 (Ct.App.2002).

### 1. Statement that Madison had fifteen victims

■ To the extent that Madison contends that the inclusion of the statement at the parole hearing that he had fifteen victims violated his right against self-incrimination, this argument is undermined by Madison's own assertions. He does not suggest that he was unlawfully compelled by the parole board to admit this fact, but claims that *he did not say it.* Accordingly, the Fifth Amendment right against self-incrimination is not implicated here.

### 2. Statements contained in the PSI

■ Madison also argues that any statements he made to the presentence investigator should be purged from his record. A defendant's Fifth Amendment privilege against self-incrimination applies both at the sentencing hearing and in presentence evaluations. *Estrada v. State,* 143 Idaho 558, 563, 149 P.3d 833, 838 (2006); *State v. Wilkins,*

125 Idaho 215, 217–19, 868 P.2d 1231, 1233–35 (1994); *State v. Lankford,* 116 Idaho 860, 871, 781 P.2d 197, 208 (1989). However, if a defendant desires the protection of the Fifth Amendment, he generally must claim it or it will be lost. That is, if one who is being questioned does not assert the privilege and instead voluntarily responds without protest, the responses are not considered to have been compelled within the meaning of the Fifth Amendment. *Murphy,* 465 U.S. at 427–28, 104 S.Ct. at 1142–43, 79 L.Ed.2d at 419–20; *Curless,* 137 Idaho at 143, 44 P.3d at 1198 (holding that the defendant's failure to assert the Fifth Amendment during a psychosexual evaluation precluded him from asserting the privilege on appeal). In this case, Madison has presented no evidence suggesting that during the preparation of the PSI, he claimed the Fifth Amendment privilege and was nevertheless compelled to answer, nor that compulsion prevented him from asserting the privilege. Because Madison never asserted the privilege, he is not entitled to its protections, and his claim that the presentence investigation interview violated his Fifth Amendment privilege therefore fails.

### 3. Statements made during therapy

■ We next examine whether Madison's Fifth Amendment rights were implicated by the allegedly compelled admission, during treatment by a Department of Correction therapist, that he was sexually attracted to his daughter who was the victim of his crime. We hold that this claim is without merit for at least two reasons. First, there has been no Fifth Amendment violation because Madison's statements were not used against him in a criminal proceeding and, second, the statements were not incriminating.

In *Chavez v. Martinez,* 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003), the United States Supreme Court held that the plaintiff had no cause of action for damages for violation of the Fifth Amendment where his allegedly compelled statements were never used against him in a criminal prosecution. In that case, Martinez brought an action under 42 U.S.C. § 1983 on the theory that his right against self-incrimination was vio-

lated by an officer who interrogated him while he was in an emergency room receiving treatment for several gunshot wounds. Martinez was not charged with a crime, and his answers were never used against him in any criminal case. A four-justice plurality of the Supreme Court was of the view that when statements have been compelled by police interrogations, "it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." *Id.* at 767, 123 S.Ct. at 2001, 155 L.Ed.2d at 993. The mere use of compulsory questioning, without more, the plurality said, does not violate the Constitution. *Id.* Two additional justices who did not join in the plurality opinion nevertheless also rejected Martinez's argument that the questioning alone was a completed violation of the Fifth Amendment subject to redress by an action for damages under § 1983. *Id.* at 777–79, 123 S.Ct. at 2006–08, 155 L.Ed.2d at 1000–01 (Souter, J., concurring in the judgment).

The Idaho Supreme Court earlier reached the same conclusion in *State v. Crowe,* 131 Idaho 109, 952 P.2d 1245 (1998), where the defendant had been required to participate in sex offender therapy as a condition of his probation. During therapy, he admitted that he had fondled a minor while on probation, and this statement was used against him in a subsequent probation revocation hearing. The defendant argued that his right against self-incrimination had been violated. The Idaho Supreme Court held that no violation had occurred because the statements were used in a probation revocation hearing, not in a criminal trial. Thus, we conclude that because Madison does not assert that any of his allegedly compelled statements were used against him in a criminal prosecution, he has not alleged a cognizable civil claim for violation of the Fifth Amendment.

██ Madison's claims also fail for the additional reason that he has not shown that the allegedly compelled admissions were incriminating. The Fifth Amendment provides

a privilege against answering official questions "where the answers might incriminate him in future criminal proceedings." *Murphy,* 465 U.S. at 426, 104 S.Ct. at 1141, 79 L.Ed.2d at 418 (quoting *Lefkowitz,* 414 U.S. at 77, 94 S.Ct. at 322, 38 L.Ed.2d at 281). That is, the privilege applies only if there is some rational basis for believing that the answer to a question will incriminate the individual and no assurance has been given that neither the statement nor its fruits will be used against him in a subsequent prosecution. *Murphy,* 465 U.S. at 429, 104 S.Ct. at 1143, 79 L.Ed.2d at 420; *Brown v. Walker,* 161 U.S. 591, 599–600, 16 S.Ct. 644, 647–48, 40 L.Ed. 819, 821–22 (1896). In *dicta,* the *Murphy* Court observed that the Fifth Amendment privilege is not available when a defendant is being questioned about violations of conditions of probation that do not constitute new criminal acts because the answers could not be used to incriminate the probationer in another crime. While the answer to the questions might result in termination of probation, the Court said, a probation revocation proceeding is not a separate criminal proceeding. *Murphy,* 465 U.S. at 435 n. 7, 104 S.Ct. at 1146 n. 7, 79 L.Ed.2d at 425 n. 7. Thus, information is not incriminating if disclosure poses no realistic threat of criminal prosecution.

In this case, Madison's admission that he had been sexually attracted to his daughter could not be used against him in a criminal prosecution, for he had already been convicted and sentenced for molestation of his daughter before he made the statement. Double jeopardy protections insure that he cannot be reprosecuted for this offense.[2] Madison speculates that his statement could negatively impact potential future parole eligibility proceedings, sex offender classification proceedings, eligibility for prison therapy programs, or civil cases. None of these, however, are criminal proceedings. *See Folk v. Pennsylvania,* 425 F.Supp.2d 663, 667–68 (W.D.Pa.2006) (no violation of defendant's

---

**2.** The time for appeal of Madison's conviction has long since passed, as has the statute of limitation for any post-conviction action challenging the conviction. Madison does not contend that there exist any pending post-conviction actions challenging the validity of his conviction or any

other proceeding that could lead to a new trial on the charge for which he was convicted, such that the admission of sexual attraction to his daughter could be used against him in a new trial.

right against self-incrimination when parole board declined to grant parole after defendant refused to admit guilt to sexual crimes during therapy, for parole eligibility proceedings do not constitute a criminal cases); *In re Mark,* 292 Wis.2d 1, 718 N.W.2d 90, 100 (2006) (statements regarding the crime of which defendant was convicted, or confession to activities that are not criminal but violate conditions of parole, are not incriminating for Fifth Amendment purposes); *Bankes v. Simmons,* 265 Kan. 341, 963 P.2d 412, 419 (1998) (statements compelled during prison sexual abuse treatment program may be used against inmate in a civil commitment proceeding as a sexually violent predator). Because the proceedings in which Madison alleges that his statements could be used against him are not criminal proceedings and the statement does not implicate him in a separate crime, he has no Fifth Amendment claim.[3]

## C. Cruel and Unusual Punishment

■ Madison also alleges that forcing him to falsely admit a sexual attraction to his daughter, in combination with the allegedly incorrect statement that he had fifteen victims, constitutes cruel and unusual punishment. He contends that he is being stigmatized by family, friends, inmates, and prison officials as a serial pedophile, that he is no longer able to trust his therapists and prison officials, and that he experiences mental anguish at being forced to say that he perceived his daughter in a sexual light.

The Eighth Amendment, which restrains the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments"

on those convicted of crimes. The Supreme Court has explained its application as follows:

> [T]he Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates."
>
> . . . .
>
> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities."

The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 832, 834, 114 S.Ct. 1970, 1976, 1977, 128 L.Ed.2d 811, 822, 823 (1994) (internal citations omitted). When considered against this articulation of what constitutes "cruel and unusual punishment," it is readily apparent the unpleasant emotional and social conditions of which Madison complains are not sufficiently serious to amount to an Eighth Amendment violation.

---

**3.** A further word concerning the scope of Fifth Amendment protections is appropriate to ensure that our holding in this case will not be misunderstood nor applied too expansively. We have addressed today only whether an individual who did not invoke the self-incrimination privilege and who made statements allegedly under compulsion may obtain the remedy of removal of the statements from his prison records. We do not address the quite different issue of whether the government may penalize a person who, not having been offered immunity, legitimately invokes the privilege and refuses to provide potentially incriminating information. The United States

Supreme Court's decision in *Chavez* did not overturn decades of precedent allowing the self-incrimination privilege to be asserted in contexts other than criminal cases and granting relief where the government has penalized persons for their refusal to waive the privilege. To the contrary, the *Chavez* plurality expressly recognized the continuing authority of those decisions and characterized them as establishing "prophylactic rules" that are necessary to protect the "core constitutional right." *Chavez,* 538 U.S. at 768 n. 2, 770–72, 123 S.Ct. at 2001 n. 2, 2002–04, 155 L.Ed.2d at 994 n. 2, 995–97.

## D. Other Issues

Madison's pro se appeal brief also mentions several other claims that he contends were alleged in his civil rights complaint, but were not addressed by the district court. As to these additional claims, we have either considered them and find them to be without merit or have been presented with no coherent legal argument that we are able to identify and address.

## III.

### CONCLUSION

Madison's factual allegations and evidence, even when accepted as true and liberally construed in his favor, show no right to relief in this civil rights action on any of the theories he has advanced. Therefore, the district court correctly granted summary judgment dismissing the action. Summary judgment for the respondents is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.