**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

ALEXANDRE ZDENEK DAVIS,

*Defendant - Appellant.*

No. 24-1099

D.C. No.
1:22-cr-00106-DLC-1

OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, District Judge, Presiding

Argued and Submitted April 2, 2025
Portland, Oregon

Filed October 20, 2025

Before: Jay S. Bybee, Kenneth K. Lee, and Danielle J. Forrest, Circuit Judges.

Opinion by Judge Lee

# SUMMARY[*]

## Criminal Law

The panel affirmed the sentence imposed on Alexandre Zdenek Davis in a case in which he pleaded guilty to making a false statement during a firearms transaction, making a false statement in an application for a passport, and aggravated identity theft.

After pleading guilty, Davis asked the district court to order a psychological evaluation under 18 U.S.C. § 4241 to determine his mental competency before sentencing. He also requested that his evaluation be filed with the court, as required under the statute. But when unfavorable information from the evaluation ended up in his presentencing report, Davis objected to the court considering that information at sentencing.

On appeal, Davis contended that the district court's use of his psychological evaluation violated his Fifth Amendment right against self-incrimination. The panel held that even if an exception to the enforceability of Davis' appellate waiver applies to this claim, the claim fails on the merits. Davis invoked *Estelle v. Smith*, 451 U.S. 454 (1981), in which the Supreme Court established that the right against self-incrimination exists in certain circumstances during sentencing. The panel concluded that the holding in *Estelle* does not extend beyond the distinct circumstances of that case to Davis' psychological evaluation here. The district court did not violate Davis' right against self-incrimination

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

by considering the results of his voluntary examination when determining his sentence.

The panel held that Davis' waiver of appeal in his plea agreement bars his challenge to an enhancement for obstruction of justice and to two special conditions of supervised release.

**COUNSEL**

Tim Tatarka (argued) and Colin M. Rubich, Assistant United States Attorneys; Jesse A. Laslovich, United States Attorney; Office of the United States Attorney, United States Department of Justice, Billings, Montana; for Plaintiff-Appellee.

Jason T. Holden (argued), Faure Holden Henkel Terrazas PC, Great Falls, Montana, for Defendant-Appellant.

## OPINION

LEE, Circuit Judge:

After pleading guilty to various crimes, Alexandre Zdenek Davis asked the district court to order a psychological evaluation under 18 U.S.C. § 4241 to determine his mental competency before sentencing. He also requested that his evaluation be filed with the court, as required under the statute. But when unfavorable information from the evaluation ended up in his presentencing report, Davis apparently had a change of heart and objected to the court considering that information at sentencing.

On appeal, Davis contends that the district court's use of his psychological evaluation violated his Fifth Amendment right against self-incrimination. But the Supreme Court case that Davis invokes to support his claim, *Estelle v. Smith*, 451 U.S. 454 (1981), does not extend the right against self-incrimination so far. We thus hold that the district court did not err by considering Davis' voluntary psychological evaluation during sentencing. Davis also challenges two other aspects of his sentence, but those claims are barred by the waiver of appeal in his plea agreement.

We affirm the sentence.

## BACKGROUND

In 2021, having previously been convicted of a felony, Alexandre Zdenek Davis could not lawfully purchase a firearm. Undeterred, Davis used another man's identity to buy a Ruger 9mm semi-automatic pistol from a Cabela's store in Billings, Montana. Davis presented the store clerk with a Montana driver's license that he had fraudulently

obtained under the other man's name, and he falsely claimed that he had no prior felony convictions. After successfully buying the pistol, Davis then tried his luck at a U.S. passport application office. There, he used the same fraudulent driver's license to obtain a passport, which he later used to travel to Turkey and Mexico.

## I. Davis pleads guilty and waives his right to appeal his sentence.

The government indicted Davis for this conduct, and Davis ultimately agreed to plead guilty to making a false statement during a firearms transaction, 18 U.S.C. § 922(a)(6), making a false statement in an application for a passport, 18 U.S.C. § 1542, and aggravated identity theft, 18 U.S.C. § 1028(a)(1).

The plea agreement included a waiver of appeal. It read:

> **Waiver of Appeal of the Sentence - Conditional**: The defendant understands that the law provides a right to appeal and collaterally attack the sentence imposed in this case. 18 U.S.C. § 3742(a), 28 U.S.C. §§ 2241, 2255. The prosecution has a comparable right of appeal. 18 U.S.C. § 3742(b). By this agreement the defendant waives the right to appeal or collaterally attack any aspect of the sentence, including conditions of probation or supervised release, if the sentence imposed is within or below the guideline range calculated by the Court, regardless of whether the defendant agrees with that range. This waiver includes challenges to the constitutionality of any

statute of conviction and arguments that the admitted conduct does not fall within any statute of conviction. This waiver does not prohibit the right to pursue a collateral challenge alleging ineffective assistance of counsel. The United States waives its right to appeal any aspect of the sentence if the sentence imposed is within or above the guideline range calculated by the Court.

At his plea hearing, a magistrate judge went over the waiver of appeal with Davis. During their colloquy, the magistrate judge repeatedly confirmed with Davis that he understood that he "waived all right to appeal" as long as the district court judge sentenced him within or below the calculated guideline range. Further, when the magistrate judge asked Davis if he had discussed the waiver with his attorney, Davis responded, "I have, in great detail." The district court later accepted Davis' guilty plea.

## II. Davis asks the district court to order a psychiatric or psychological examination.

After Davis pleaded guilty—but before sentencing—Davis asked the court to order a psychiatric or psychological examination under 18 U.S.C. § 4241 to "aid the Court in determining whether Mr. Davis is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Section 4241(b) provides that, before a hearing on the defendant's competency, "the court may order that a psychiatric or psychological examination of the defendant be conducted[] and . . . *filed with the court*[] pursuant to the provisions of section 4247(b)

and (c)," which require the examiner to file his or her report with the court and to provide copies to the defendant and the government's attorney. 18 U.S.C. §§ 4241(b) (emphasis added), 4247(c) (stating that the report "shall be filed with the court"). Davis in his motion asked that the examiner's report be filed with the court.

The district court agreed to an evaluation but asked Davis if he wished to be evaluated by a private examiner or by a Federal Bureau of Prisons (BOP) examiner. Davis elected for a BOP examiner. Davis again requested that the BOP examiner's report be provided to the district court.

Davis did not receive a warning under *Miranda v. Arizona*, 384 U.S. 436 (1966), at the evaluation, but the examiner told Davis that "any information he provided was subject to inclusion in the evaluation report, which would be available to the court." Davis completed the psychological evaluation, and the BOP examiner's report was filed with the court. Davis did not request a competency hearing, and his case proceeded to sentencing.

## III. The district court overrules Davis' objections at sentencing.

In preparing a Presentence Report (PSR) for the court before sentencing, the probation officer incorporated some of the BOP examiner's findings. At sentencing, Davis balked at the court's consideration of the results of his psychological examination. He contended that the use of his examination violated Rule 12.2(c)(4) of the Federal Rules of Criminal Procedure, which forbids the admission of a defendant's statements during a psychological examination except when the defendant has properly introduced evidence of his mental condition. The district court overruled Davis'

objection, finding that there was no Rule 12.2(c)(4) violation.

Davis raised two other objections to the PSR that are relevant to this appeal. First, Davis objected to the recommended 2-level obstruction of justice enhancement for his untruthfulness during the presentence investigation. The court overruled that objection, explaining that it had "very serious concerns" about Davis' veracity on several issues. Second, Davis objected to two special conditions of release as overly restrictive. After overruling those objections, too, the court imposed the special conditions.

The district court sentenced Davis within the guideline range to fifty-one months in prison and three years of supervised release. Davis timely appealed his sentence, and we have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review the waiver of the statutory right to appeal de novo. *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996). Issues raised for the first time on appeal are reviewed for plain error. *See United States v. Wells*, 29 F.4th 580, 592 (9th Cir. 2022). To establish plain error, there must be an error that is plain and affects substantial rights. *See United States v. Cotton*, 535 U.S. 625, 631 (2002). But we may only correct that error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration in original) (citation omitted).

## DISCUSSION

### I.  We reject Davis' Fifth Amendment challenge to his sentence.

#### A.  Despite the appeal waiver, we may address the merits of Davis' Fifth Amendment claim.

Before reaching the merits of Davis' Fifth Amendment claim, we must determine whether he waived his right to appeal it.  Under his plea agreement, Davis may not appeal "any aspect of the sentence, including conditions of probation or supervised release."

When a defendant knowingly and voluntarily waives his right to appeal his sentence, this court generally will not review the merits of an appeal.  *Wells*, 29 F.4th at 583–84.  But under the *Bibler* exception, we will hear an appeal despite a waiver when a sentence is "illegal."  *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007).  "A sentence is illegal if it . . . violates the Constitution."  *Id.* (citation omitted).  Specifically, a defendant may escape an appeal waiver under the *Bibler* exception "if (1) the defendant raises a challenge that the sentence violates the Constitution; (2) the constitutional claim directly challenges the sentence itself; and (3) the constitutional challenge is not based on any underlying constitutional right that was expressly and specifically waived . . . ."  *Wells*, 29 F.4th at 587.

Even if the *Bibler* exception to an appellate waiver applies here, Davis' Fifth Amendment claim ultimately fails on the merits.[1]

---

[1] Recently, a three-judge panel decided that the second requirement— that the defendant's claim challenge the "sentence itself"—includes not

## B. The district court did not violate Davis' right against self-incrimination by relying on his voluntary psychological examination during sentencing.

Davis argues that by considering his psychological evaluation at sentencing, the district court forced him to incriminate himself in violation of the Fifth Amendment. Davis did not receive a *Miranda* warning before his evaluation, although he consented to the evaluation after the examiner reminded him that the results would be provided to the court. Because Davis did not object to the use of the evaluation on Fifth Amendment grounds during sentencing, we review his claim for plain error. *See Wells*, 29 F.4th at 592. We conclude that the district court did not err by considering Davis' evaluation.[2]

---

only substantive challenges but also procedural ones. *See United States v. Atherton*, 106 F.4th 888, 894–95 (9th Cir. 2024) (extending *Bibler* exception to "informational inputs to the court's sentencing decision"), *vacated*, 134 F.4th 1009 (9th Cir. 2025). But shortly after we heard argument in this case, our court granted en banc review and vacated the three-judge panel opinion. While *Atherton* remains pending before the en banc court, it is an open question whether constitutional challenges to the sentencing process fit under the *Bibler* exception. But the outcome of *Atherton* will not change the outcome of Davis' case because his claim fails on the merits. We thus address the merits now rather than wait for the en banc decision in *Atherton*. *See Wells*, 29 F.4th at 585 n.1 ("[A] plea agreement's appeal waiver does not divest our court of jurisdiction to hear an appeal.").

[2] Davis' argument that the district court also violated Rule 12.2(c)(4) is barred by the appellate waiver because that claim is based on an alleged violation of the Federal Rules of Criminal Procedure, not the Constitution.

### i. The right against self-incrimination articulated in *Estelle v. Smith* does not apply in this context.

District courts enjoy "substantial discretion at sentencing." *Baumann v. United States*, 692 F.2d 565, 576 (9th Cir. 1982). The sentencing court "may consider any relevant information," regardless of its admissibility at trial, as long as the information appears reliable. *United States v. Alvarado-Martinez*, 556 F.3d 732, 735 (9th Cir. 2009). But Davis argues that the Fifth Amendment right against self-incrimination limits the court's discretion to consider the results of his psychological evaluation.

Davis points to *Estelle*, in which the Supreme Court established that the right against self-incrimination exists in certain circumstances during sentencing. 451 U.S. at 466–69. The facts in *Estelle* were "distinct." *Id.* at 466. While the defendant awaited his capital murder trial, the state court sua sponte ordered that he undergo a psychiatric examination to determine his competency to stand trial. *Id.* at 456–57. The defendant was not advised before the examination of his "right to remain silent and that any statement he made could be used against him at a sentencing proceeding." *Id.* at 461. The examiner decided that the defendant was competent to stand trial, and the case proceeded to trial. *Id.* at 457.

The defendant's capital murder trial had two phases: after he was found guilty of murder, a separate penalty hearing before the same jury was held to determine whether the defendant would receive a death sentence. *Id.* At the penalty hearing, the state had to prove to the jury the defendant's future dangerousness beyond a reasonable doubt. *Id.* at 458. To prove future dangerousness, the state introduced testimony from the doctor who conducted the

defendant's pretrial psychiatric examination. *Id.* at 458–60. The defendant did not put his mental competency into issue during the penalty hearing. *Id.* at 466. The jury returned a death sentence. *Id.* at 458.

The Court in *Estelle* decided that the state violated the defendant's right against self-incrimination. *Id.* at 466–69. The Court held that a "defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id.* at 468. Under such circumstances, we must assume that the defendant's statements "were not 'given freely and voluntarily'" without a *Miranda* warning. *Id.* at 469 (quoting *Miranda*, 384 U.S. at 478).

Davis argues that we should extend the scope of *Estelle* and hold that the district court's consideration of his psychological evaluation at sentencing was improper. Davis contends that *Estelle* applies because he underwent a court-ordered evaluation for one purpose (to determine his mental competency) but that the examiner's report was used for a different purpose (sentencing).

But Davis' case differs from *Estelle* in several important ways. First, crucially, the trial judge in *Estelle* sua sponte ordered the defendant to undergo the psychiatric examination. *Id.* at 456–57. That the defendant in *Estelle* did not request the examination informed the Court's view that his statements were not "given freely." *Id.* at 469 (quoting *Miranda*, 384 U.S. at 478). Davis, in contrast, voluntarily asked the court to order the evaluation. That differentiates Davis' case from the coercive nature of the sua sponte examination in *Estelle*. Other decisions have

similarly distinguished *Estelle* based on whether the defendant voluntarily requested the psychiatric evaluation. *See, e.g.*, *Buchanan v. Kentucky*, 483 U.S. 402, 422 (1987) (refusing to extend *Estelle* to defendant who requested a psychiatric examination later presented to the jury); *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (affirming lower court's decision not to apply *Estelle* to a capital defendant on habeas review in part because he requested psychiatric exam); *Gibbs v. Frank*, 387 F.3d 268, 274 (3d Cir. 2004) ("The Fifth and Sixth Amendments do not necessarily attach, however, when the defendant himself initiates the psychiatric examination . . . .").

Second, unlike Davis, the defendant in *Estelle* did not know at the time of the examination that his statements would be used during sentencing. 451 U.S. at 467. His statements were "unwittingly made without an awareness that he was assisting the State's efforts to obtain the death penalty." *Id.* at 466. But here, Davis knew when he requested the evaluation that the examiner would file a copy of the report with his sentencer (the district court). In fact, Davis voluntarily moved the court to order an examination under 18 U.S.C. § 4241(b)—which requires a psychological report be filed with the court. The examiner also reminded Davis before starting the evaluation that any information he provided could be shared with the court.

Granted, Davis requested the evaluation to determine his mental competency rather than for consideration at sentencing. But Davis should not have been surprised that the district court would consider the report, given that a sentencing court has discretion to consider a "largely unlimited" scope of reliable information regardless of its inadmissibility at trial. *See United States v. Tucker*, 404 U.S. 443, 446 (1972).

Further, the state relied on the defendant's psychological evaluation in *Estelle* in a meaningfully different way from how the district court used Davis' evaluation here. In *Estelle*, the state used the defendant's psychological evaluation to prove "a critical issue at the sentencing hearing, and one on which the State had the burden of proof beyond a reasonable doubt." 451 U.S. at 466. That the state used the defendant's evaluation to prove such a "crucial issue" matters when translating the protections in *Estelle* to noncapital sentencing. *See id.* at 467.

Here, the district court did not consider Davis' evaluation to make any "crucial" factual determinations or to satisfy the government's burden of proof. Instead, the court considered Davis' report within its general consideration of "the information concerning [Davis'] background, character, and conduct . . . for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *cf. United States v. Kennedy*, 499 F.3d 547, 551–52 (6th Cir. 2007) (holding that *Mitchell* did not "limit the district court's ability to consider" the defendant's refusal to submit to a psychosexual evaluation outside of determining the facts of the offense); *Lee v. Crouse*, 451 F.3d 598, 605–06 (10th Cir. 2006) (similar).

We distinguished *Estelle* on similar grounds in *Baumann*, 692 F.2d at 574–78. There, the defendant argued that the district court violated his right against self-incrimination when it considered his presentence interview with the probation officer during noncapital sentencing. *Id.* at 574. We "read *Estelle* narrowly," limiting it to its "distinct circumstances." *Id.* at 576. We held that "there is a substantial difference between a psychiatric examination of the defendant in a capital case which seeks to elicit evidence from the defendant relating to the critical aggravating factor

of dangerousness, and a 'routine' presentence interview." *Id.* Even assuming the defendant was subject to custodial interrogation in the interview, we held that "neither *Estelle* itself, nor the general principles announced in *Miranda*, require that a convicted defendant be warned of his right to counsel and his right to remain silent prior to submitting to a routine, authorized presentence interview."[3] *Id.* And although the presentence interview in *Baumann* was compulsory like the psychological examination in *Estelle*, we still held that the considerations that motivated *Estelle* were not present there. So too here—especially where Davis elected for his psychological evaluation before sentencing.

### ii. Our decision aligns with the Sixth Circuit.

The Sixth Circuit rejected a claim nearly identical to Davis' in *United States v. Graham-Wright*, 715 F.3d 598 (6th Cir. 2013). There, the defendant claimed that the district court violated his right against self-incrimination by considering information from a psychiatric examination

---

[3] That the right against self-incrimination does not attach to Davis' evaluation is also evidenced by comparing *Baumann* to another case we decided the same year. *See Jones v. Caldwell*, 686 F.2d 754 (9th Cir. 1982). In *Jones*, we held that the defendant's privilege against self-incrimination was violated when the court increased the defendant's sentence after he confessed to "numerous other crimes" during a presentence probation interview. *Id.* at 755. We held that the privilege applies when "the state's agent seeks from the convicted defendant a confession of additional criminal activity and that confession is used to enhance a defendant's sentence." *Id.* at 756. Meanwhile, in *Baumann*, the judge relied on the probation officer's view that the defendant's profession of innocence during the interview illustrated a "lack of remorse." 692 F.2d at 575. The facts of *Baumann* are more like how the district court used Davis' evaluation here: The court did not rely on any confessions to other crimes to enhance Davis' sentence, but rather included the examiner's report in its holistic consideration of Davis.

during noncapital sentencing. *Id.* at 601. As here, the defendant in *Graham-Wright* requested an examination under 18 U.S.C. § 4241 to determine his competency, and the district court considered the results at sentencing. *Id.* at 600–01. The defendant first requested a defense-only evaluation, but the district court denied that request and ordered that the results be filed with the court. *Id.* at 603. The Sixth Circuit held that there was no Fifth Amendment violation and rejected the defendant's analogy to *Estelle*. Rather, the court held that *Estelle* was limited to its particular facts: "a *capital defendant's* right against self-incrimination" involving "the results of an *involuntary* examination to prove an *aggravating factor*." *Id.* at 602.

Here, the facts are even worse for Davis than they were for the defendant in *Graham-Wright*, who at first asked for his examination not to be shared with the district court. That the Sixth Circuit still declined to apply *Estelle* underscores why we find no issue with the district court's consideration of Davis' voluntary evaluation.

\* \* \*

As in *Baumann*, we find that the Court's holding in *Estelle* does not extend beyond the "distinct circumstances" of that case to Davis' psychological evaluation here. *See* 451 U.S. at 466. The *Estelle* court made clear that its decision did not necessarily apply to "all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination," *id.* at 469 n.13, and we hold that *Estelle* does not apply to the examination in this case. The district court did not violate Davis' right against self-incrimination by considering the results of his voluntary examination when determining his sentence.

## II. Davis' appeal waiver bars his remaining claims.

Davis offers two other reasons why we should remand this case for resentencing. Both are barred by the appeal waiver in his plea agreement.

First, Davis challenges the two-point enhancement for obstruction of justice under the Sentencing Guidelines. But Davis waived his right to appeal his sentence as inconsistent with the Guidelines. Although Davis summarily accuses the district court of violating due process, that does not transform his claim into a constitutional one that might have survived his waiver under the *Bibler* exception. *See Waterkeeper All. v. U.S. Env't Prot. Agency*, 140 F.4th 1193, 1213 (9th Cir. 2025) (explaining that we do not consider arguments that are not meaningfully developed in the opening brief).

Second, Davis takes issue with two of his special conditions of supervised release imposed under the Guidelines. Davis again tries to invoke the *Bibler* exception by claiming that the conditions violate his constitutional rights, but he does not make any meaningful constitutional argument. The appeal waiver bars this claim, too.[4]

---

[4] Perhaps aware that his claim does not survive the appeal waiver, Davis also argues that he did not knowingly waive his right to appeal the conditions of supervised release because the magistrate judge did not expressly ask him whether he understood that the waiver included those conditions. We look to the "circumstances surrounding the signing and entry of the plea agreement to determine whether" a waiver was knowing and voluntary. *United States v. Lo*, 839 F.3d 777, 783–84 (9th Cir. 2016) (citation omitted). The circumstances here clearly show that Davis knowingly waived his right to appeal his conditions of supervised release. Davis' appeal waiver expressly mentions claims about the

## CONCLUSION

For the reasons discussed, we **AFFIRM** the sentence imposed by the district court.

---

conditions, and the magistrate judge explained to Davis what supervised release meant before reviewing the waiver. *See United States v. Watson*, 582 F.3d 974, 986–87 (9th Cir. 2009). Further, Davis repeatedly confirmed that he understood the terms and impact of his waiver, including that he discussed that waiver with his attorney "in great detail."